**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Craig Phillip Blades,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-24-00006-PHX-KML<br><br>**ORDER** |

Plaintiff Craig Phillip Blades was the representative payee for his daughter's benefits from the Social Security Administration ("SSA"). In 2014, the SSA claimed Blades had misrepresented his status as custodian of his daughter and demanded he repay $45,055.00 in benefits he received on behalf of his daughter. An Administrative Law Judge later cut that amount in half, but Blades believes he should not be liable for even the reduced amount. The standard under which the court must view the ALJ's decision is deferential, but there is no indication the ALJ accounted for Blades's payment of child support. Therefore, the case is remanded for recalculation or an explanation why recalculation is not merited.

**I.   Background**

Craig Blades and Janette Blades had a daughter, Vanessa, in 1996. (*See* Doc. 7-2 at 23 (stating Vanessa turned 18 in 2014).) Blades and Janette were married in 2000 and divorced in 2003. (Doc. 7-3 at 7.) In connection with their divorce Blades and Janette executed a custody agreement and parenting plan where each parent had custody of

Vanessa for set amounts. In addition, Blades was required to pay Janette $312.00 per month in child support.[1] (Doc. 7-3 at 8, 18.) In 2005, Blades and Janette agreed to a modified parenting plan. (Doc. 7-8 at 9.) The modified plan required Blades have custody of Vanessa for two days each week and two weekends per month. (Doc. 7-8 at 9-10.)

In 2010, Blades was found disabled and began receiving disability benefits. A child is entitled to benefits if her parent is disabled but the benefits are paid to a "representative payee" for that payee to spend on supporting the child. The representative payee must use the benefits received only for the beneficiary, keep the benefits separate from his own funds, and conserve benefits not needed for the beneficiary's current needs. 20 C.F.R. § 404.2035; POMS GN 00502.114 (2023), *available at* https://secure.ssa.gov/poms.nsf/lnx/0200502114 (last visited November 13, 2024). In September 2011, Blades visited an SSA office to make a claim on Vanessa's behalf. (Doc. 7-2 at 9.) An SSA employee interviewed Blades and entered Blades's responses into a computerized application. Blades later received a written copy of the application reflecting his answers. According to the written application, Blades told the SSA Vanessa "lives with me." (Doc. 7-2 at 10.) Blades also claimed to "be the best payee for [Vanessa] because [he was] her relative and [he] take[s] care of her." (Doc. 7-2 at 10.) In making the application Blades affirmed that if he were selected as the representative payee, he would "[u]se the payments for [Vanessa's] current needs and save any currently unneeded benefits for future use." (Doc. 7-2 at 11.) Blades also agreed he would notify the SSA if Vanessa's "living arrangements" changed. (Doc. 7-2 at 11.)

In October 2011, the SSA sent Blades a letter informing him Vanessa was entitled to benefits beginning January 2010 and he had been selected as the representative payee. (Doc. 7-2 at 15.) Blades would receive on Vanessa's behalf $17,703 in back payments and $843 per month going forward. The letter reminded Blades it was important to inform the SSA of any changes regarding Vanessa. (Doc. 7-2 at 16.) And the letter included a

---

[1] The ALJ stated the monthly child support was $317.00. (Doc. 7-1 at 104.) The difference between the ALJ's amount and the amount reflected in the divorce decree is not explained but may be due to a processing fee.

pamphlet discussing Blades's obligations as representative payee.

In January 2014, Vanessa was applying for federal financial aid to attend college. (Doc. 7-1 at 23.) According to Blades, Janette and Vanessa reported Blades as Vanessa's primary parent because Blades's income was lower than Janette's and that would entitle Vanessa to more generous financial aid. Four months later, on May 15, 2014, Janette went to an SSA office to report "payee misuse." (Doc. 7-4 at 13.) At that visit Janette informed the SSA that Vanessa had "resided with [Janette] since birth." (Doc. 7-1 at 13.) Janette submitted a declaration under penalty of perjury stating Craig had "misused" Vanessa's benefits. (Doc. 7-3 at 27.) Janette's "allegation of misuse" stated in relevant part:

> Child in common resides with me. I received recent knowledge that [Blades] has been receiving a monetary benefit for our daughter through information rec'd through a school teacher. Craig is also delinquent on child support and has told Vanessa that he is no longer going to pay this because he doesn't know what I am spending the money on.

(Doc. 7-4 at 1.)

On June 11, 2014, Vanessa also submitted a declaration under penalty of perjury. That declaration stated:

> Around May 2014 I became aware of the benefit that my father Craig Blades was receiving on my behalf. I have been living with my mother Janette Reeves since their divorce in 2003. I have visited my father and stayed over night occasionally but did not live with him. I found out about the benefit from a teacher at school. I do not believe that this money has been used for me. He pays for my phone bill monthly.

(Doc. 7-4 at 9-10.) Based on these statements, the SSA investigated and concluded Blades had "misrepresented his status as custodian of" Vanessa. (Doc. 7-1 at 101.) The SSA determined Blades "made an incorrect and false statement when he indicated [Vanessa] was living with him since 2010, and [Blades] knew or should have known his statement was false." (Doc. 7-1 at 101.) The SSA concluded Blades was required to repay $43,215, the total Blades had received as representative payee for Vanessa from 2010 through Vanessa turning 18 in 2014. Blades sought review within the SSA and appeared before an ALJ on two dates in 2021. (Doc. 7-1 at 101.) Shortly after the second hearing, the ALJ

issued a written decision finding Blades had been overpaid but in the amount of one-half of the full amount, *i.e.*, $21,607.50.

The ALJ found Blades and Janette "had physical custody and joint decision-making authority under Arizona law for [Vanessa]." (Doc. 7-1 at 105.) Thus, it did not qualify as a "misuse of funds simply because [Blades had been] named as the representative payee." (Doc. 7-1 at 105.) But Blades did misuse Vanessa's benefits by failing "to inform [Vanessa] of her benefits and to discuss with her the ways the funds were to be used to best meet her needs." (Doc. 7-1 at 105.) Based on the written statements provided by Janette and Vanessa, as well as unidentified statements by Blades, the ALJ concluded Blades first received benefits in 2011 but "did not disclose the award of the benefits or the ways in which they would be used until May of 2014." (Doc. 7-1 at 105.) The ALJ seemed to recognize Blades had been paying $312 per month in child support, but "the fact remain[ed] that he withheld over $500.00 per month outside the knowledge of [Vanessa] or [Janette]." (Doc. 7-1 at 105.)

In ruling how much Blades should be required to repay, the ALJ found Blades had received $43,215 and had "used at least half of the amount he received . . . to provide food, shelter, necessities, and other things for [Vanessa's] welfare." (Doc. 7-1 at 108.) But Blades "was not entitled to exercise control over the entire amount." (Doc. 7-1 at 108.) Thus, Blades was required to repay "one half of the amount he received." Thus, Blades was required to repay $21,607.50. (Doc. 7-1 at 108.) Blades sought review within the SSA of the ALJ's decision but was not successful. Blades then filed the present suit.[2]

---

[2] The SSA argues in a single sentence, without citing relevant authority, that Blades did not appeal the "2014 determination that he misused the funds, which is therefore not properly before this Court." (Doc. 20 at 4.) Presumably the SSA is arguing that Blades cannot attack the finding that he had committed misuse of funds. Instead, Blades may only argue he was entitled to a waiver of collection. *See, e.g.*, *Manitsas v. Colvin*, 565 F. App'x 652 (9th Cir. 2014) (failure to seek reconsideration of overpayment determination left waiver as only issue). In the decision now on review, the ALJ believed she was determining "whether there has been an overpayment of Disability Insurance Benefits" as well as whether any overpayment should be waived. (Doc. 7-1 at 102.) Based on the ALJ's own belief that she was assessing if an overpayment had occurred and the SSA's half-hearted argument that the misuse determination was not preserved, the court will consider the merits.

**II.     Analysis**

The court may set aside the ALJ's decision only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). In cases involving overpayment of benefits, "the Commissioner bears the burden of proving the fact and amount of overpayment." *McCarthy v. Apfel*, 221 F.3d 1119, 1124 (9th Cir. 2000).

As a representative payee, Blades was required to use Vanessa's benefits for her maintenance, including costs incurred in obtaining food, shelter, clothing, medical care, and personal comfort items. 20 C.F.R. § 404.2040(a)(1). If Blades did not spend Vanessa's benefits to support her, he "misused" the benefits. 42 U.S.C. § 1383(a)(2)(A)(iv). And if Blades misused the benefits, he is required to repay the misused funds unless an exception applies. 20 C.F.R. § 404.2041(a).

Blades's briefing primarily argues the ALJ made factually incorrect findings. For example, the ALJ found Blades had not informed Vanessa and Janette about his receipt of benefits. Blades argues that is "false" and Blades did talk to Vanessa about the benefits. (Doc. 18 at 2.) Blades also argues he never submitted a written application claiming Vanessa was living with him and the paperwork in the record was not sufficient to conclude Blades had made that assertion. (Doc. 18 at 5.) And Blades argues the ALJ did not sufficiently address Vanessa's financial aid application and how that indicated he was providing more support than Vanessa or Janette claimed. All these factual challenges fail because conflicts in the evidence were for the ALJ to resolve. *See Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023) (noting ALJ has duty to resolve inconsistencies and conflicts in evidence). But construed liberally, Blades is also arguing the ALJ miscalculated the amount of benefits he should be required to repay. That argument may have merit.

According to Blades, the ALJ's ruling requiring repayment of $21,607.50 did not account for the child support he paid during the time he was the representative payee. Blades claims he continued to pay the same child support amount after he became disabled

despite his "disability income [being] drastically smaller than his previous working salary." (Doc. 18 at 3.) Accordingly, Blades states he "overpay[ed] child support" while he was disabled because his actual income would have required far less than $312.00 per month. (Doc. 23 at 10.) After filing his reply Blades requested leave to submit a surreply that provides additional arguments that the ALJ did not properly account for the child support Blades paid. (Doc. 24.) Because the court is unable to determine how the ALJ accounted for the child support, remand for further proceedings is necessary.

The ALJ found Blades had presented evidence "he used at least half of the amount he received for [Vanessa's] benefit to provide food, shelter, necessities, and other things for her welfare." (Doc. 7-1 at 108.) The ALJ also found Blades had "paid $317.00 [sic] per month in child support out of the [benefits] he received each month for [Vanessa]." (Doc. 7-1 at 105.) There were 50 months where Blades received benefits as Vanessa's representative payee. (Doc. 7-1 at 107.) Accepting that Blades paid child support for all those months, Blades would have paid Janette a total of $15,600 in child support out of the benefits he received as representative payee. Accordingly, under the ALJ's own analysis, Blades may have expended $21,607.50 of the benefits he received supporting Vanessa *and* paid Janette $15,600 in child support, which would have totaled $37,207.50 towards supporting Vanessa.[3]

But it is not clear whether the ALJ included the child support payments in calculating the amount Blades should be required to repay, nor did the ALJ explain why it was proper to ignore the child support payments. Perhaps the ALJ was attempting to convey the $21,607.50 Blades expended on supporting Vanessa included $15,600 paid in child support. Alternatively, perhaps it was proper for the ALJ to ignore the child support payments. Or perhaps the ALJ simply overlooked the $15,600 paid in child support. The court cannot rule out any of these possibilities. Therefore, the court cannot determine

---

[3] Arizona's Child Support Guidelines in effect prior to the date of Blades's divorce provided that if Janette had been the representative payee for Vanessa's benefits, Blades would not have been required to pay any child support. *See* Arizona Child Support Guidelines, section 26(B), available at https://www.azcourts.gov/Portals/31/Child%20Support/2005CSGRED.pdf (last visited October 30, 2024).

whether the amount Blades must repay was calculated properly. Without a sufficient showing how the ALJ performed the calculation, the SSA has not carried its burden of proving the "amount of overpayment" and this case is remanded for further proceedings. *McCarthy v. Apfel*, 221 F.3d 1119, 1124 (9th Cir. 2000).

Accordingly,

**IT IS ORDERED** the decision by the Commissioner is **VACATED** and this case is remanded for additional proceedings consistent with this order. The Clerk of Court shall enter judgment in favor of plaintiff and against defendant.

**IT IS FURTHER ORDERED** the Motion to Supplement (Doc. 24) is **GRANTED**.

Dated this 13th day of November, 2024.

_____
**Honorable Krissa M. Lanham**
**United States District Judge**

- 7 -